**Barbara R. PEEL, Plaintiff-Appellant Cross Appellee,**

v.

**AMERICAN FIDELITY ASSURANCE COMPANY, a foreign corporation, and Does I through X, inclusive, Defendant-Appellee Cross Appellant.**

No. 81–4104.

United States Court of Appeals, Fifth Circuit.

July 12, 1982.

Donald C. Dornan, Jr., William L. Denton, Biloxi, Miss., for plaintiff-appellant cross appellee.

James N. Compton, Lisa Paige Binder, Carter O. Bise, Biloxi, Miss., for defendant-appellee cross appellant.

Before GEE, RUBIN and GARZA, Circuit Judges.

PER CURIAM:

Mrs. Barbara Peel, then a Mississippi school teacher, obtained a disability insurance policy from American Fidelity Assurance Company in 1971. Under its terms, disability due to illness yielded two years in benefits while disability arising from an accident led to lifetime benefits.

In 1973, American Fidelity and the Mississippi Education Association (MEA)

changed the terms of the group policy under which Mrs. Peel obtained her insurance. These changes, effective September 1, 1973, were approved by Mississippi's commissioner of insurance. The only change relevant to this case was one in coverage: benefits were reduced under the new policy by the amount of other disability payments (social security, etc.) received by the beneficiary.

In February 1974, Mrs. Peel slipped and fell off a concrete slab patio, injuring her back. She worked briefly after the accident and then resigned. In March 1974, her physician concluded that she probably had suffered a ruptured disc. American Fidelity began disability payments that month, although whether this disability was caused by illness or the independent injury is disputed. Mrs. Peel subsequently moved to another town in Mississippi, where another physician diagnosed a ruptured disc. This practitioner examined her several times between June 1974 and November 1976 and supported her disability claims.

In 1975, American Fidelity asked Mrs. Peel for the amount of other disability payments she was receiving. She complied and her benefits were apparently reduced. In July 1975, the Department of Health, Education and Welfare (HEW) had a Dr. Attix examine Mrs. Peel. Dr. Attix briefly examined her and did not disagree with the earlier diagnoses of the other doctors. HEW apparently took no action to end her social security disability.

In July 1976, American Fidelity requested and received an Equifax report that contained no medical information. Her doctor revealed that she refused surgery that might improve her condition, a suggestion also made by Dr. Attix. American Fidelity then retained Dr. Attix (not knowing of his earlier work for HEW) to examine Mrs. Peel in September 1976. Dr. Attix reported, and testified at trial, that in his opinion, based on his examination and without seeing Mrs. Peel's prior records or talking to the other two doctors, Mrs. Peel could work as a teacher. Mrs. Peel's doctor continued to submit claims for disability, but based on Dr. Attix' report American Fidelity terminated her benefits in November 1976. In 1979, Mrs. Peel's social security benefits were terminated based on 1977 and 1979 examinations by Dr. Attix. She sued American Fidelity in 1978 and the jury rendered a verdict for actual damages under the insurance contract for its unlawful termination of benefits. The trial judge did not permit the jury to consider punitive or extra-contractual compensatory damages. Mrs. Peel draws these denials before us, while American Fidelity cross-appeals from the judgment on several grounds.

■ The refusal of the trial court to submit the two extraordinary damage claims to the jury is the equivalent of directing a verdict upon them in favor of American Fidelity. On the question of punitive damages, it appears to be part of the substantive law of Mississippi, by which we are bound in this diversity case, that where an "arguable defense" to coverage exists punitive damages cannot be imposed on an insurance carrier. We have so held and are bound by that holding. *Henderson v. United States Fidelity & Guaranty Co.*, 620 F.2d 530 (5th Cir.), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). We conclude that the findings and report of Dr. Attix that Mrs. Peel was not disabled to return to teaching constitute an arguable defense as a matter of law. Hence, the trial court correctly refused to submit the issue of punitive damages to the jury.

■ Mrs. Peel's complaint of the court's refusal to submit her claim for extra-contractual compensatory damages based on a tortious breach of contract or on negligent failure to investigate her claim properly raises more doubtful questions. Mississippi has thus far reserved the question "whether actual damages for tortious breach of contract may be properly awarded in addition to punitive damages arising from an independent tort ...." *Traveler's Indemnity Co. v. Wetherbee*, 368 So.2d 829, 836 (Miss. 1979). Whether they are or not is thus uncertain, but it seems clear that if they are, it must be upon the basis of the independent tort of "bad faith" recognized by Mississippi law. This requires proof of an

act "intentionally or willfully done or done with such grossness and recklessness as to evince utter indifference to consequences." *T. G. Blackwell Chevrolet Co. v. Eshee*, 261 So.2d 481, 485 (Miss.1972). As Mrs. Peel argues on brief to us, "[t]he Mississippi decisions have used language equivalent to the test for punitive damages and, hence, the same as the test for the independent tort of bad faith," citing *Arnold v. Spears*, 217 Miss. 209, 63 So.2d 850, 854 (1953) ("malice ... entire want of care ... great indifference"). We conclude, as we did on the issue of punitive damages, that reasonable persons could not differ that the evidence does not support such a finding here.

■ Finally, we agree with the trial court that, assuming an action lies under Mississippi law for negligent claim investigation by an insuror, the evidence does not support the submission of such an issue here. Nothing to which Mrs. Peel directs us in the record, *e.g.*, proceeding on the basis of Dr. Attix' report alone, indicates a negligent failure to investigate. Further than this Mississippi law has not yet gone. *See Bellefonte Insurance Co. v. Griffin*, 358 So.2d 387 (Miss.1978). Since it has not, neither can we.

■ Turning to the cross-appeal of American Fidelity, we find merit in some of its arguments. Complaint is first made of certain comments made by the trial judge at voir dire of the jurors which are said to reflect unfavorably on insurance companies. These were made in the course of advising the jurors that insurance defendants were entitled to receive the same consideration as any other party and took the form of noting that many people dislike such companies "because of the way so many insurance companies mistreat people." No objection was raised to the comments, and while we agree with defendant that the quoted matter would have been better left unsaid, in context it does not amount to plain error. Hence, in the absence of an objection, we cannot review it. Nor do we discern merit in American Fidelity's claim that the evidence of Mrs. Peel's disability was insufficient to support the verdict. Two physi-cians concluded she was disabled; the weight to be given their evidence was for the jury.

American Fidelity next complains of the submission to the jury of whether Mrs. Peel received notice of amendment of the master policy, made after she became insured but before her injury, to require diminishment of her disability payments under it by the amount of other disability payments—such as social security—received by her. The threshold question is whether direct notice to her was necessary in order for the amendment to apply to her.

Mississippi recognizes that agency is the key issue in these cases. In *Seymore v. Greater Mississippi Life Ins. Co.*, 362 So.2d 611 (Miss.1978), policy provisions known only to and changed by an insurer and its agent were held not binding on the unnotified insured. *See also Southern Ins. Co. v. Ryder Truck Rental, Inc.*, 240 So.2d 283 (Miss.1970). If the MEA was Mrs. Peel's agent when it renegotiated policy coverage, knowledge of the change in coverage was imputed to her as principal. *See* Restatement (Second) of Agency §§ 9(3), 268(1)(c) (1958).

■ The MEA is a voluntary association of teachers created to advance the interests of teachers. Record evidence reveals that the MEA applied to American Fidelity for group insurance and obtained it at least as early as 1959. Mrs. Peel took advantage of this insurance in 1971. Her certificate of coverage contained a preface set off from the body of the text and highlighted which clearly revealed that the MEA held the group policy for Mississippi teachers. Subsequent provisions told her that the policy was in the possession of the MEA and that her certificate was subject to that policy. Further, one of the termination provisions provided that coverage ended when she ceased to teach in Mississippi, in other words left the MEA.

It is clear to us from the record evidence and the nature of the MEA that, as a matter of law, it served as Mrs. Peel's agent in any negotiations over the coverage of

this policy. The relationship between Mrs. Peel and the MEA should be analogized to that of union member and union, a relationship long described in terms of agency. *See, e.g., Steele v. Louisville & Nashville R.R.,* 323 U.S. 192, 201–04, 65 S.Ct. 226, 231–32, 89 L.Ed. 173 (1944).

Holding the MEA to be Mrs. Peel's agent in this case is a sound rule: the real insured under a group policy is not the individual but the group of individuals and the agent acts on behalf of the group for the benefit of the group as a whole. *See* J. Appleman & J. Appleman, *Insurance Law & Practice* § 43, at 93 (1981). That is precisely why the MEA negotiated a policy modification here. American Fidelity was paying out too much under the old policy and had to either raise the premiums or reduce coverage. Rather than raise the premiums, the MEA negotiated for reduced coverage. All the teachers benefitted thereby to the detriment of some individuals, among them Mrs. Peel. However, none of the teachers may complain since the power to negotiate had been delegated to the MEA as their agent. And, since the MEA was Mrs. Peel's agent, MEA's knowledge of the policy changes is imputed to her, relieving American Fidelity of any duty it may have had to inform her directly.

Thus the trial court erred in permitting the jury to consider which policy, 1971 or 1973, applied to Mrs. Peel. The 1973 policy was in effect when she was injured and she is bound by it. Her damages must be calculated with reference to the 1973 policy.

Finally, American Fidelity attacks the trial judge's award of prejudgment interest at 8%. Since Mrs. Peel failed to request such interest in her pleadings, this award must be reversed. *See Randal Craft Realty Co. v. Unijax, Inc.,* 653 F.2d 1066, 1070 (5th Cir. 1981).

To summarize, we affirm the liability of American Fidelity, but reverse and remand for recalculation of damages in accordance with this opinion.

AFFIRMED in Part; REVERSED in Part; and REMANDED.