Mary L. HORTON

v.

HARTFORD LIFE INSURANCE COM-
PANY, d/b/a "The Hartford," A
Connecticut Corporation.

No. DC82–148–LS–O.

United States District Court,
N.D. Mississippi,
Delta Division.

Aug. 23, 1983.

Christian T. Goeldner, Southaven, Miss.,
for plaintiff.

T.H. Freeland, III, Oxford, Miss., for de-
fendant.

## MEMORANDUM OPINION

SENTER, Chief Judge.

This cause came on for hearing on the
defendant's motion for summary judgment.

Having read and considered the memoranda submitted by the parties together with the exhibits, depositions, and answers to interrogatories, the court is now in a position to dispose of the issues raised by the defendant's motion.

This is an action by Ms. Horton, a former employee of Lufkin Industries, against Hartford Life Insurance Company, that employer's group insurance carrier, seeking: (1) damages for breach of the insurance contract; (2) punitive damages for bad faith failure to settle the claim; and (3) damages for intentional infliction of emotional distress. The action is based upon two group insurance plans, Exhibits "A" and "B" to the complaint. Exhibit "A" is a group disability policy issued by Hartford. Exhibit "B" is a group medical payment insurance plan issued by The Tennessee Life Insurance Company, not a party to this action. The defendant has motioned for summary judgment. Each of the issues raised by the defendant's motion will be discussed separately within this opinion.

### Collateral Estoppel

Defendant argues that Ms. Horton is collaterally estopped from relitigating the issue of permanent and total disability in the face of a prior adjudication by the Administrative Law Judge of the Social Security Administration that Ms. Horton was neither physically nor mentally disabled. It is now well established that courts will not hesitate to apply res judicata effect to issues of fact properly before an administrative agency, acting in its judicial capacity, and which the parties have had an adequate opportunity to litigate. *United States v. Utah Construction Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Collateral estoppel will only apply, however, where

> (1) the issue to be decided is identical to that involved in the prior action; (2) this issue was actually litigated in the prior action; and (3) the prior determination made on this issue was necessary and essential to the resulting judgment. Moreover, the cause of action in the successive litigation is the same where the primary right and duty, and the delict or wrong are the same in each action. [Citation omitted.]

*Environmental Defense Fund v. Alexander,* 501 F.Supp. 742, 750 (N.D.Miss.1980). These requirements are not met in the action sub judice. The definition of disability found in Section 223(d)(1) of the Social Security Act (42 U.S.C. § 423(d)(1)),[1] supplemented by the definitions and criteria set forth in 20 C.F.R. § 404.1501, et seq. (1982),[2] is much more constricted than is the definition of disability contained within the Hartford policy.[3]

The marked difference which exists in the breadth of these definitions of "total disability" forecloses a finding that the issue in the action sub judice is identical to

1. "Disability" is defined by Section 223(d)(1) as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."

2. 20 C.F.R. § 404.1508 (1982) states that "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."

3. The term is defined in the Hartford's policy thus: "Totally disabled means that you are unable solely because of accidental injury or sickness, to engage in any occupation or employment for wage or profit for which you are or become reasonably qualified by training, education, or experience. Disability benefits are limited as follows: 'If you are totally disabled because of a psychotic disorder, a psychophysiologic, autonomic or visceral disorder, a psychoneurotic disorder, a personality disorder, or any other mental, emotional or nervous disorder of any type, or alcoholism, benefits will be payable while you are confined in a hospital or institution qualified to provide medical care and treatment incident to such disability; except that if you are not so confined, or the period of confinement is less than three months duration, benefits will be paid until twenty four months' benefits have been paid.' "

the issue previously litigated in the Social Security Administration proceeding. In addition, it is clear that the duty of Hartford in regard to the provision of disability coverage under its policy of insurance is not the same as the duty owed to Ms. Horton by the Social Security Commission. Thus, the causes of action are not the same. *Environmental Defense Fund v. Alexander,* 501 F.Supp. at 750. Accordingly, the doctrine of collateral estoppel is not applicable to the action sub judice. Defendant's motion for summary judgment on this issue is, therefore, not well taken.

### Medical Expenses

The defendant argues that it cannot be liable for the failure or refusal of a nonrelated carrier to pay Ms. Horton's claims for medical expenses, none of which are covered by the Hartford policy. Plaintiff, in paragraphs 9, 10, and 11 of her complaint, alleges that defendant's failure to recognize plaintiff's total and continuing disability has resulted in the nonpayment of medical expenses under a policy of insurance issued by Tennessee Life Insurance Company. Plaintiff has not alleged that there is any connection between Hartford and the Tennessee Life Insurance Company, nor has she stated any reason why Hartford's refusal to recognize her total disability has resulted in a similar refusal by an independent insurance company. The Hartford policy does not provide for the payment of medical expenses nor does the policy issued by the Tennessee Life Insurance Company make payment of medical expenses dependent upon a finding, by Hartford, of total disability. This court cannot, therefore, find any basis upon which Ms. Horton can recover from Hartford for failure to pay medical expenses. There being no genuine issue of fact, the court finds that the defendant's motion for summary judgment as to paragraphs 9, 10, and 11 of plaintiff's complaint is well taken.

### Punitive Damages

Punitive damages may only be recovered in a breach of contract action where the proof presented by the plaintiff establishes that the "breach [was] ... attended by intentional wrong, insult, abuse or gross negligence as to consist of an independent tort." *New Hampshire Ins. Co. v. Smith,* 357 So.2d 119, 121 (Miss.1978); *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396, 398 (Miss.1975). Punitive damages are not awardable, however, "if the insurer has a legitimate or arguable reason for failing to pay a claim." *Michael v. National Security Fire & Casualty Co.,* 458 F.Supp. 128, 131 (N.D.Miss.1978).

The facts pertinent to a determination of the propriety of an award of punitive damages in the action sub judice are as follows:

Ms. Horton filed her claim for disability benefits August 10, 1979. On August 22, 1979, the insurance company acknowledged the receipt of the Attending Physician's Statement, completed by Dr. Robison July 27, 1979, and requested a narrative report regarding Ms. Horton's medical history and current medical condition. On September 13, 1979, the insurance company contacted Dr. Robison, seeking a response to the August 21 request for information. Dr. Robison's September 19, 1979, narrative report was, thereafter, received by the insurance company. On the basis of this information, disability benefits were extended through September 30, 1979.

On October 26, 1979, a request for information and re-evaluation was sent by the insurance company to Dr. Robison. The insurance company received a response to this inquiry on or about November 8, 1979. Thereafter, the insurance company arranged to have Dr. Thomas Meriwether conduct an independent medical examination of Ms. Horton. This examination took place on January 17, 1980. Dr. Meriwether forwarded a copy of this report to the insurance company on February 13, 1980. The report stated, in Dr. Meriwether's opinion, that Ms. Horton was not totally disabled but was, at the most, suffering from an emotional depression with some psychosomatic discomforts. On March 13, 1980, the insurance company requested additional information from Dr. Meriwether regarding

Ms. Horton's condition. This information was forwarded to the insurance company on March 26, 1980. Thereafter, on March 31, 1981, a letter was sent to the insurance company by Dr. Robison reaffirming his opinion that Ms. Horton was totally disabled.

On April 8, 1980, the insurance company sent a letter to Ms. Horton informing her that based upon a review of her file by the Home Office Medical Department, she did not meet the total disability requirements of the policy and was not, therefore, eligible for additional disability benefits. The insurance company did, however, extend disability benefits through January 16, 1980— the date on which the independent medical examination occurred.

Following this decision, the insurance company, on May 28, 1980, contacted Dr. Robison seeking a review of the medical report submitted to the insurance company by Dr. Meriwether. Dr. Robison responded to this request on June 7, 1980, stating that he was in concurrence with the findings of Dr. Meriwether but reiterating his belief that Ms. Horton was disabled. On June 18, 1980, the insurance company sought clarification of the June 7, 1980, letter from Dr. Robison. Dr. Robison responded to this letter on June 25, 1980. In response to the information received from Dr. Robison, the insurance company contacted Ms. Horton on July 14, 1980, informing her that disability benefits would be resumed as soon as the necessary information required by the policy regarding other income benefits was received. Thereafter, on July 27, 1980, the insurance company contacted A.G. Burkhart, Ms. Horton's attorney, confirming the insurance company's decision to pay disability benefits through July 26, 1981, and seeking an updated medical report, a confirmation of the names and addresses of all examining physicians, and a copy of the denial notice sent to Ms. Horton by the Social Security Administration. On August 1, 1980, the insurance company, in response to a letter from Mr. Burkhart indicating that his client was in dire need of funds, sent a letter waiving the signing of a reimbursement agreement prior to payment and enclosing a check for two thousand six hundred and nineteen dollars, representing payment of disability and additional benefits for the period from January 17, 1980, through July, 1980. It appears that the insurance company made regular payments under the policy from July, 1980, through July, 1981. Disability benefits were terminated as of July, 1981, following a decision on June 5, 1981, of the Administrative Law Judge of the Social Security Administration denying Ms. Horton's claim for disability benefits under the Social Security laws and a decision by the insurance company that the mental and nervous limitation was applicable.

■ The uncontested facts, as set forth above, clearly establish that the insurance company has at all times since the initial filing of the claim in August of 1979, questioned whether, and to what extent, Ms. Horton was "totally disabled" within the meaning of the policy. The insurance company's uncertainty as to Ms. Horton's alleged disability appears to have been caused, or heightened, by the conflicting medical reports received from Dr. Robison and Dr. Meriwether. The plaintiff has admitted that a dispute existed and continues to exist as to whether she is "totally disabled", for in her brief in response to the defendant's motion for summary judgment, she states that genuine issues of fact exist as to: (1) whether plaintiff is totally and permanently disabled and (2) whether the disability, if any, is caused by mental impairment.

The action sub judice is, therefore, controlled by the decision of the Fifth Circuit in *Peel v. American Fidelity Assurance Co.,* 680 F.2d 374 (5th Cir.1982). In *Peel,* the insurance company terminated payments under a disability policy when, as a result of conflicting medical reports, a dispute arose as to claimant's continuing disability. Affirming the action of the trial court in directing a verdict on the punitive damages issue, the Fifth Circuit stated:

It appears to be part of the substantive law of Mississippi, by which we are bound

in this diversity case, that where an "arguable defense" to coverage exists, punitive damages cannot be imposed on an insurance carrier.... We certainly conclude that the findings and report of Dr. Attix that Mrs. Peel was not disabled ... constitute an arguable defense as a matter of law.

680 F.2d at 376. A dispute as to whether a claimant is disabled which arises from a difference of opinion between two doctors' diagnosis of the claimant's condition is, therefore, sufficient to bar punitive damages.

Although the dispute in this action sub judice has existed over a long period of time and the actions of the insurance company in suspending payments to Ms. Horton at least twice during this period from August, 1979, to July, 1981, are questionable, these actions cannot be said to rise to the level of an independent tort. The actions of the insurance company were clearly the result of a dispute as to whether Ms. Horton was disabled and thus can be deemed nothing more than negligent. There existing an arguable basis or excuse for the insurance company's refusal to pay further disability payments, the plaintiff is barred, as a matter of law, from the recovery of punitive damages. *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396, 397–398 (Miss.1975). The defendant's motion for summary judgment on the issue of punitive damages is, therefore, well taken.

### Extra-Contractual Damages/Emotional Distress

In *Peel v. American Fidelity Assurance Co.,* 680 F.2d 374, 376 (5th Cir.1982), the Fifth Circuit stated that:

Mississippi has thus far reserved the question "whether actual damages for tortious breach of contract may be properly awarded in addition to punitive damages arising from an independent tort...." [Citation omitted.] Whether they are or not is thus uncertain, but it seems clear that if they are, it must be upon the basis of the independent tort of "bad faith" recognized by Mississippi law. This requires proof of an act "intentionally or willfully done or done with such

grossness and recklessness as to evince utter indifference to the consequences." [Citation omitted.]

■ Similarly, in order to recover for intentional infliction of emotional distress, anguish, or suffering, the plaintiff must show that Hartford's denial of her claim was: (a) a wanton or shamefully gross wrong, or (b) outrageous conduct, (c) an act done maliciously, intentionally, or with such gross negligence or recklessness as to show an indifference to the consequences. *Sears, Roebuck and Co. v. Devers,* 405 So.2d 898, 901–902 (Miss.1981).

■ In the previous discussion of the issue of punitive damages, the court found that the actions of Hartford, based as they were upon a genuine dispute as to whether Ms. Horton is totally disabled, did not rise to the level of an intentional wrong, insult, abuse, or gross negligence as to amount to an independent tort. In light of this finding, it is clear that plaintiff is barred from recovery of extra-contractual damages and damages for emotional distress as a matter of law. The defendant's motion for summary judgment on the claims for extra-contractual damages and damages for emotional distress is, therefore, well taken.

An appropriate order will be entered.