**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-60312

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK

Plaintiff - Appellant

v.

LOWRY DEVELOPMENT LLC

Defendant - Appellee

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LOWRY DEVELOPMENT LLC

Plaintiff - Appellant

v.

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, a subsidiary
of American Financial Group, Inc.

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

This is a policy coverage dispute between Lowry Development, LLC and
Great American Insurance Company of New York. The damages creating the

dispute were caused by Hurricane Katrina. Lowry sought recovery under its policy. We find that Lowry's policy did not include wind coverage. Accordingly, we REVERSE the district court's contrary determination.

## I. BACKGROUND

Lowry, the insured, is the real estate developer of Tuscan Villas. The Villas are a two-condominium project located in Gulfport, Mississippi. In early 2003, Great American issued Lowry a builder's risk policy for the construction of Tuscan I. That first phase of the project has been completed. Construction of Tuscan II commenced. Great American issued Lowry a builder's risk policy in early 2004 for it. Hurricane Katrina struck prior to the completion of Tuscan II. Substantial damage resulted.

A business relationship between these parties began as early as 2003. At that time, Lowry told its procuring agent, Groves and Associates Insurance, Inc., that builder's risk coverage was needed during the construction of Tuscan I. Groves contacted Crump Insurance Services of Memphis, which served as Great American's selling broker. The resulting policy covered many construction risks, but no wind coverage was obtained. Instead, protection against damages from wind was purchased from the Mississippi Wind Pool.[1] The policy terminated in 2004 when construction was completed.

In January 2004, Lowry informed Groves that coverage was now needed for the construction of Tuscan II. Groves contacted Crump. Groves and Crump disagreed in the district court about the details of their negotiations. Crump contended that the negotiations excluded wind coverage, while Groves alleged that negotiations included it. Undisputed is that, on January 29, Great

---

[1] The Mississippi Wind Pool is the name commonly given to the Mississippi Windstorm Underwriting Association. That entity was established by the Mississippi legislature in 1987 "to provide a mandatory program to assure an adequate market for windstorm and hail insurance in the coast area of Mississippi." Miss. Code Ann. § 83-34-1 note.

American sent to Crump a confirmation that it would issue a builder's risk policy that excluded coverage for wind, hail, flood, and earthquake. Crump then sent to Groves a "Quotation Confirmation." In Crump's transmittal, the "Coverage Type" was said to be "All Risk Excl. Earthquake & Flood." A separate section, labeled "Policy Conditions," excluded wind, hail, flood, and earthquake.

Following receipt of the confirmation of the price quote, Great American authorized Crump to issue a binder extending coverage for Tuscan II.[2] The binder, dated January 29, 2004, had the same dichotomy as the earlier price quote. The "Coverage Type" was "All Risk Excl. Earthquake & Flood." The "Policy Conditions" excluded wind, hail, flood, and earthquake.

Great American thereafter issued the insurance policy. Contrary to its prior communications with Crump, the policy did not contain a wind exclusion. Great American attributes this to a clerical mistake that occurred when the policy information was entered into its record system. It contends that the error was caught two and a half months after the original policy was issued, and in April 2004, a wind exclusion endorsement was added. The endorsement was sent to Crump, who forwarded it to Groves.

The April wind exclusion endorsement stated that there was "no change in premium" but that the "wind-related exclusion [was] added per quote." A cover letter accompanying the endorsement also asked Groves to review the attached documents "and advise if there are any changes or corrections to be made." Groves did not respond with any concerns.

The policy was scheduled to expire in January 2005, but Tuscan II was not complete by then. Groves requested a coverage extension. The first was for six months. At the time of the first extension, Crump sent Groves a renewal policy

---

[2] Insurance binders "are temporary contracts of insurance, which extend coverage until a written policy is issued or until the coverage is ultimately rejected by the insurer." JEFFREY JACKSON, MISSISSIPPI INSURANCE LAW & PRACTICE § 3:2 (2008).

containing a wind exclusion endorsement. Groves faxed it to Lowry. A later extension, granted via an endorsement, provided ninety additional days of coverage. That final extension took coverage into the time that Hurricane Katrina damaged the property.

After Katrina, Lowry sought recovery under its policy. Great American filed a suit based on diversity in the U.S. District Court for the Southern District of Mississippi. It sought a declaratory judgment that the policy did not cover wind damage. Lowry responded with counterclaims against Great American, Groves, and Crump.[3] Lowry also filed a suit in state court that was later removed. The district court consolidated the cases. Both Great American and Lowry moved for summary judgment.

Great American's argument was twofold. Either it had validly added a wind exclusion prior to Katrina, or the policy should be reformed under the doctrine of mutual mistake. Because we agree with Great American that the policy did not contain wind coverage at the time of Hurricane Katrina, we will not address the mutual mistake issue. The district court found that the April 2004 endorsement was ineffective. It also held that Great American failed to comply with the provisions of a Mississippi notice statute when it sought to add the wind exclusion to the policy. Partial summary judgment was granted. A professional negligence claim against Groves was never resolved.

The mutual mistake question was submitted to a jury. Jurors found no mistake. The parties stipulated to damages in the amount of $1,525,000. Judgment was entered for Lowry. Great American appealed.

## II. DISCUSSION

On this appeal, we review a summary judgment on the effect of the April 2004 endorsement. We consider the factual submissions and legal analysis on

---

[3] Lowry subsequently dismissed its claims against Crump.

which the judgment was based *de novo*. *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 297 (5th Cir. 2008). We resolve the case on that sole issue.

There are two central facts in the case. The first is that the builder's risk policy as first issued included wind coverage. The second is that Great American sought later to add a wind exclusion.

As to the exclusion, there were two relevant events. In April 2004, an endorsement was sent to Groves that added the wind exclusion. The April date was two and a half months after the issuance of the original policy. Groves never sent the change to Lowry. The second relevant event was the issuance of a renewal policy in January 2005. The renewal occurred after the parties agreed to extend insurance coverage for an additional six months. Groves faxed the renewal to Lowry. By its terms, the renewal policy excluded wind coverage.

We start with the April 2004 wind exclusion endorsement. Its efficacy is governed by Mississippi law. Importantly, "consideration is . . . required when insurance policies are modified by the insurer." JACKSON, *supra*, § 3:10. Absent proof of mistake, the consideration paid must be taken to have been in exchange for the benefits reflected in the terms of the initial policy. That included coverage for wind damage. We do not need to reach whether there was a mistake in the initial policy. The jury said there was not.

Great American sought to modify the policy in April 2004 through the issuance of the wind exclusion. We note that there was no new consideration such as a premium rebate or Great American's suffering a legal detriment in exchange for the decrease in coverage. *See Krebs ex rel. Krebs v. Strange*, 419 So. 2d 178, 183 (Miss. 1982) (holding that an insurer's offer that it might renew the insurance contract if the insured agreed to the modification was not supported by adequate consideration). Nonetheless, for reasons that will become apparent later, it is unnecessary to decide – and therefore we do not decide – whether the April 2004 endorsement was an ineffective unilateral modification.

The district court observed that, but for Lowry's failure to comply with a Mississippi notice statute that we will discuss, the January 2005 renewal "might have been deemed sufficient notice of the reduction in coverage to bind Lowry to the terms of the policy." We therefore turn to two questions: (1) what was the effect of the state statute on the renewal policy, and (2) if the notice statute is not a bar, do the terms of the renewal policy excluding wind coverage apply?

The first question concerns a statute that makes ineffective a nonrenewal or certain identified changes to a policy unless proper notice is first given:

> A cancellation, reduction in coverage or nonrenewal of liability insurance coverage, fire insurance coverage or single premium multiperil insurance coverage is not effective as to any coverage issued or renewed after June 30, 1989, unless notice is mailed or delivered to the insured and to any named creditor loss payee by the insurer not less than thirty (30) days prior to the effective date of such cancellation, reduction or nonrenewal.

Miss. Code Ann. § 83-5-28(1).

The district court found no Mississippi precedents relevantly interpreting this statute. The open issue was "whether and in what circumstances delivery of a notice of cancellation or a reduction in coverage to an agent (and not to the insured) satisfies the statutory requirements"; the answer was in favor of Lowry. "The statute unequivocally requires," the district court explained, "that the notice be sent by the insurer to the insured, and delivery to the insured's agent does not conform to this statutory requirement." We examine that analysis.

"'The primary rule of [statutory] construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein.'" *Bailey v. Al-Mefty*, 807 So. 2d 1203, 1206 (Miss. 2001) (quoting *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980)). To decipher legislative intent, courts "may look not only to the language used but also to its

historical background, its subject matter, and the purposes and objects to be accomplished." *Id.* (internal quotation marks omitted).

The purpose of notice statutes such as this is to allow the insured to obtain insurance elsewhere when there is a reduction of coverage. *See Carter v. Allstate Indem. Co.*, 592 So. 2d 66, 74 (Miss. 1991). Whether or not notice to such an agent is adequate to accomplish this goal depends on the relationship between the insured and its agent. "Mississippi recognizes that agency is the key issue in [notice] cases." *Peel v. Am. Fid. Assurance Co.*, 680 F.2d 374, 377 (5th Cir. 1982). In *Peel*, we relied on Section 268(1)(c) of the *Restatement (Second) of Agency*, which states that notice to an agent constitutes notice to the principal when it is given "to an agent authorized to conduct a transaction, with respect to matters connected with it as to which notice is usually given to an agent." In that case, the plaintiff was insured under a Mississippi Education Association ("MEA") group policy. *Id.* at 375-77. Two years after the issuance of the policy, the insurance company and MEA reduced coverage, but notice was given only to the insured's agent. "If the MEA was [the plaintiff]'s agent when it renegotiated policy coverage, knowledge of the change in coverage was imputed to her as principal." *Id.* at 377. This holding is consistent with general law: "Knowledge on the part of [an] insured's agent is imputed to the insured." LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 46:21 (3d ed. 2006).

The *Peel* policy was issued before the statute we have been discussing was adopted in 1989. So in addition to considering the relationship between Lowry and Groves, we need to consider whether the statute changed agency rules.

The relationship of Lowry and Groves can be seen in the fact that Groves had express authority to handle all matters related to insurance. Lowry testified that its standard practice was to send insurance documents to Groves without reading them. Accordingly, there would be no utility in requiring notice to be sent directly to Lowry instead of to Groves.

7

It is certainly true that an agent's authority is not limitless. Instead, the agent has only such powers as are conferred by the principal. *Gulf Guar. Life Ins. Co. v. Middleton*, 361 So. 2d 1377, 1382 (Miss. 1978). In a precedent the district court relied upon, a bank did not have authority to agree with the insured's agent to cancel the original policy without consent and without notice. *Stewart v. Coleman & Co.*, 81 So. 653, 654-55 (Miss. 1919). In so holding, the Mississippi Supreme Court wrote that "an agency to procure insurance does not necessarily confer the power to cancel insurance." *Id.* (internal quotation marks omitted). Here, though, the only evidence was that Groves's authority to act on behalf of Lowry with respect to insurance was all but plenary. Importantly, the authority the agent was questionably exercising was not a right to terminate. It was simply the right to receive notice of modification.

Lowry also cites two cases that are said to support the district court's decision. Both focused on the amount of authority the principal had bestowed upon its agent. In one, a Louisiana appeals court found that there was no evidence of "any course of dealing or express authority which would support imputing authorization for [the agent] to accept notice on behalf of" the insured. *Ferrara v. Strain*, 497 So. 2d 1077, 1080 (La. App. 1986). In the other, this court affirmed the district court's conclusion that the nominal agent actually was a broker in the transaction in question "and was not clothed with authority to accept a notice of cancellation" for the insured. *Wis. Barge Line, Inc. v. Coastal Marine Transp., Inc.*, 414 F.2d 872, 874 (5th Cir. 1969). These cases are consistent with our interpretation of Mississippi's notice statute.

Complete authority over insurance matters was delegated to this agent. The argument essentially is that Section 83-5-28 created a limitation on even the most empowered agent's authority. The statutory shackles on the agent would have to come from the requirement that certain changes are ineffective "unless

notice is mailed or delivered to the insured" in a timely manner, and only because "agents" were not mentioned. *See* Miss. Code Ann. § 83-5-28(1).

The usual rule, as we have already explained, is that agents may act on behalf of principals. "Once an agency relationship is created, the agent steps into the shoes of his or her principal and has the authority to transact business on the principal's behalf." Gordon U. Sanford, III, *Agency*, *in* 1 ENCYCLOPEDIA OF MISSISSIPPI LAW § 4:2 (Jeffrey Jackson & Mary Miller eds., 2001). Our question is whether this statute changes the rule.

We look for guidance from general rules concerning statutory construction in Mississippi. By statute, "words and phrases contained in the statutes are used according to their common and ordinary acceptation and meaning; but technical words and phrases according to their technical meaning." Miss. Code Ann. § 1-3-65. "Insured" in Section 83-5-28 is referring to a person involved in a contract with an insurer. We perceive no technical meaning in the word, such that it would block the common interpretation that authorizing a person to act in a certain way also authorizes a person's agents to do so. Further, words in statutes are to be read in context. *Kerr-McGee Chem. Corp. v. Buelow,* 670 So. 2d 12, 17 (Miss. 1995). We find no context for this use of "insured" that suggests it did not encompass an agent who was otherwise clearly authorized to send and receive notices under general agency law.

In summary, there is no language in Section 83-5-28, nor in any caselaw pointed out to us, to support that this statute should be read as preventing a properly authorized agent from being sent the notice that is required. We interpret the statute as allowing agents to receive the notice. There is no dispute that the notice of the new policy language was sent to Groves.

We now look at the effect of the renewal policy that became effective in January 2005. Lowry maintains that, even though the renewal policy excluded wind coverage, it did not become effective because Great American simply

reissued the original policy "without any notice of the change or any attempt to advise [Groves] of the changes."

On the one hand, there is "a duty to read an insurance contract and knowledge of the contract's terms will be imputed to the party even if she does not read it." *Frye v. S. Farm Bureau Cas. Ins. Co.*, 915 So. 2d 486, 492 (Miss. Ct. App. 2005). On the other, some courts in other states have recognized an exception if an insurer renews a policy without notifying the insured of a reduction in coverage. *See* RUSS & SEGALLA, *supra*, § 29:42 (collecting cases). In its brief, Lowry states that "Mississippi has not specifically addressed the issue of the effect of changes in a renewal policy without conspicuous notice of the changes" but nonetheless requests that we adopt the position of those courts that have embraced such an exception.

Apparently the only case applying Mississippi law on this point is a federal district court decision. *Gurley v. Carpenter*, 673 F. Supp. 805 (N.D. Miss. 1987). That court determined "the general rule [is] that an insured may rely on the assumption that renewal will be on the same terms as the original contract where the changes in the policy are not called to his attention." *Id.* at 809. In affirming the judgment on appeal, we explained that "we do not reach the questions of Mississippi law that the district court reached because we find that we are able to affirm its result simply by looking at the terms of the insurance policy itself." *Gurley v. Carpenter*, 855 F.2d 194, 196 (5th Cir. 1988). We also wrote that "the reasoning of the district court" was not approved. *Id.* at 196 n.1.

Whatever the law on that issue might be, there are other issues. Groves received the April 2004 wind exclusion endorsement, which clearly stated that a wind exclusion was being added to the policy and asked Groves to read "and advise if there are any changes or corrections to be made."[4] Groves sent that

---

[4] In the district court, Groves acknowledged that he received the April 2004 wind exclusion but testified that he did not actually read it. This is of no moment. Groves, as

April 2004 change to Lowry. We have already discussed that a notification given to an agent is notice to the principal, if the agent is so authorized. *See Peel*, 680 F.2d at 377. Groves was.

Therefore, even though the wind exclusion in the January 2005 renewal policy was not highlighted, the change was the single subject of the April 2004 letter. That put Groves and Lowry on notice at that time and at least required them to be aware that the renewal policy likely did not contain wind coverage. What this means is that even though the April 2004 wind exclusion endorsement may not have been adequate to modify the terms of the original policy because of the absence of consideration, it was sufficient to notify Lowry that, upon renewal, wind coverage would not be included.

We hold that the renewal policy, excluding wind coverage, governed at the time of the damage to Tuscan II.

### III. CONCLUSION

The district court's judgment is REVERSED and the cause REMANDED for proceedings consistent with this opinion.

---

Lowry's agent, had a duty to read the document. *See Frye*, 915 So. 2d at 492; RESTATEMENT (SECOND) OF AGENCY § 9(3) (1958) ("A person has notice of a fact if his agent has knowledge of the fact, reason to know it or should know it, or has been given a notification of it, under circumstances coming within the rules applying to the liability of a principal because of notice to his agent.").