The CHARLES STORES, INC., Plaintiff,

v.

AETNA INSURANCE COMPANY, Defendant.

The CHARLES STORES, INC., Plaintiff,

v.

HARTFORD FIRE INSURANCE COMPANY, Defendant.

Nos. GC 65–58–S, 65–59–S.

United States District Court,
N. D. Mississippi,
Greenville Division.

June 7, 1971.

Joseph S. Mead, Birmingham, Ala., Philip Mansour, of Mansour & Kilpatrick, Greenville, Miss., G. Hite McLean, of Kimbrough Kimbrough & McLean, Greenwood, Miss., for plaintiff.

Thomas H. Watkins, of Watkins & Eager, Jackson, Miss., Fred C. DeLong, Jr., of Campbell, DeLong, Keady & Robertson, Greenville, Miss., for defendants.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

The verdict of the jury in this action entitles plaintiff to recover of defendants the aggregate sum of $199,572.82.[1]

The judgments on the verdict of the jury have not been entered pending determination by the court of the date from which interest shall run.

Plaintiff contends that the policies of insurance involved in the action provide that the loss shall be due and payable sixty days from the receipt by defendants of the proofs of loss. The proofs were filed February 12, 1965. Hence, plaintiff contends that interest should run on the judgments from April 13, 1965. Defendants contend that a bona fide dispute existed with respect to the amount due and interest is allowable only from the time the amount due became fixed and determined by the verdict of the jury.

In this diversity action it is the duty of the court to apply the law of Mississippi in solving the question.[2]

The briefs submitted by counsel contain references to a number of Mississippi cases, and the court has studied and reviewed each in an effort to determine the true Mississippi rule.

The Mississippi Supreme Court has recently, May 31, 1971, handed down an opinion which discusses in depth the rule in Mississippi on the interest issue. The court feels that this case is controlling in the case sub judice.[3]

*Commercial Union* involves damages to a residence situated on the Mississippi Gulf Coast. The damages were sustained in Hurricane Camille in 1969. The insured carried a policy of insurance with the insurer protecting the insured against loss or damage to his residence from all perils, with certain exceptions set forth in the policy. Among the exceptions to the policy coverage, was loss "caused by, resulting from, contributed to or aggravated by any of the following: (1) flood, surface water, waves, tidal water or tidal wave, overflow of stream or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not. * * *" The dispute between the parties centered on the cause of the loss, and whether it was occasioned by one or more of the excepted perils. The residence was not a total loss. The amount and extent of loss, as well as the perils which caused the loss, were in sharp dispute.

The insured obtained a judgment against the insurer. One of the issues in the case was the date from which interest should run on the recovery.

The trial court allowed interest from the date of the judgment. The insured contended, since the insurer rejected the claim before the expiration of the sixty-day period for which provision was made in the policy, he was entitled to interest from the date of the loss.

Judge Inzer, speaking for the court, stated a clear and concise rule on the subject. Judge Inzer said:

> " * * *
>
> We are of the opinion that where as in this case there is a justifiable dispute as to the amount of the loss, the insured is not entitled to interest until the amount of the claim has been made certain or liquidated. However, we can envision cases where, in the discretion of the trial court interest

1. The proofs of loss submitted to defendants claimed a loss in the sum of $200,697.82. The basis used for this sum was the agreed retail price of the merchandise in the store at the time of the loss in the sum of $375,988.77. The uncontraverted evidence showed that this sum included twice counted merchandise of the value of $1500.00. Hence the sum of $200,697.82 must be reduced by $1,125.00, this being .75% of the value of the twice counted merchandise.

2. Petersen v. Klos, 433 F.2d 911 at 912 (5 Cir. 1970) ; Texaco Inc. v. Lirette, 410 F.2d 1064 at 1066 (5 Cir. 1969).

3. The opinion is by Judge Inzer and has been rendered in Commercial Union Insurance Company, et al. v. Byrne, Miss., 248 So.2d 777.

should be allowed although the amount of the loss is in dispute and for this reason we do not foreclose the allowance of interest in every case where the claim is unliquidated.

 \* \* \* "

The standard adopted by the court does not fix an absolute and unyielding legal principle that judgments obtained in insurance cases, where the amount of the loss is unliquidated, shall bear interest only from the date of judgment.

 The standard established in the case leaves with the trial court the right to award pre-judgment interest, where, in the trial court's discretion, the facts and circumstances in the case justify the allowance of interest, even though the extent of the loss may be unliquidated until fixed by the jury or the court.

In the action sub judice the court must determine whether the facts developed at the trial, bring the action within the exception to the rule, which authorizes the court to exercise its discretion as to allowance of pre-judgment interest.

 In deciding this issue the only facts which are pertinent to its determination are those relating to the amount of loss suffered by plaintiff as the result of the fire.

After the fire, the insurers called in a salvage company to determine the extent of the loss. Officials of the company proceeded to make an inventory of the stock at retail prices. Plaintiff furnished the personnel to count the merchandise, who worked under the supervision of the salvage company officials. The greater portion of the merchandise was damaged only by water and smoke. The counters were able to count the merchandise and list the retail price of each article. The records thus obtained were tabulated by the salvage company officials or those working under their direction. They determined that the value of the merchandise, at retail prices, was $375,988.73.[4] The salvage company took possession of the stock and disposed of it through sources available to it for the disposition of damaged merchandise. The amount realized from the sale, after deducting expenses of sale, were paid over to plaintiff.

In arriving at the extent of its loss plaintiff computed the net costs of the merchandise by using a markup figure of twenty-five (25) percent. From the amount of the loss so computed, plaintiff deducted the sum of money paid to it by the salvage company, and filed proofs of loss with the defendants stating the loss suffered to be $200,697.82.

Plaintiff made its books and records available to defendants, who sent a certified public accountant to plaintiff's office to examine them. From his examination of plaintiff's records, the accountant determined that the 25% markup was incorrect, and that a 30% markup was proper and in accord with past practices of plaintiff.

After receipt of the proofs of loss, defendants did not attempt to adjust the loss, or negotiate a lower figure. Instead, defendants refused payment of the claim in its entirety.

When the suit was filed defendants' answer set forth several grounds which defendants asserted rendered the insurance void and unenforceable. The de-

---

4. A very small portion of the stock could not be inventoried, as it was "burned out of sight". Plaintiff and the officials of the salvage company agreed upon a value for this portion of the stock. The agreed figure of $5,923.64 was added to and became a part of the gross value of $375,-988.77. During the counting of the stock, merchandise of the value of $1,500.00 was counted twice at the instance of an official of plaintiff corporation, who was not the owner of any of plaintiff's corporate stock, and who was suspected of setting fire to the store. When this fact was brought to the attention of the principal owner of plaintiff corporation, he notified the insurance companies of the double count. The evidence does not show that this sum was deducted from the value assigned to the merchandise. This incident was not in serious dispute, and of such minimal importance, that the court does not feel it is material on the issues in the case.

fense pertinent to the issue before the court was bottomed on a provision of the policies which rendered the policies void should plaintiff wilfully conceal or misrepresent any material fact or circumstance concerning the insurance or the subject thereof, or be guilty of any fraud or false swearing relating to the insurance. Defendants contended that the amount claimed by plaintiff in the proofs of loss was in excess of the actual value of the merchandise and that plaintiff falsely represented the extent of its loss, with the design to defraud defendants, thus, rendering the policies void.

This issue and all other issues were decided adversely to defendants by the jury.

The parties accepted the inventory of the merchandise made by the salvage company. The salvage company acted as an agent of defendants. The retail value of the merchandise fixed by them was accepted by plaintiff and acted upon by plaintiff.

Plaintiff's loss was unliquidated and uncertain because plaintiff used a 25% markup when reducing the value of the goods from retail to cost price. Defendants claimed that a 30% markup was proper. This difference between the parties made the loss unliquidated.

Defendants did not attempt to adjust or negotiate the difference with plaintiff. Instead, defendants relied upon the forfeiture provision of the policies above mentioned.

■ The record in the case reflects that defendants also denied the claims because of the contention that the policies were suspended at the time of the loss, on account of the violation by plaintiff of certain policy provisions, the nature of which is not here material. But, in any event, defendants contended that plaintiff could not recover on the policies because of false swearing and misrepresentation in the proofs of loss. The real dispute, therefore, was not over the amount of the loss, but, rather, whether plaintiff was entitled to any recovery.

It is, of course, apparent that plaintiff has been deprived of its money since the date the same became due.

The court is of the opinion that this case is the type and kind of a case to which the Mississippi Supreme Court made reference, when the court said in *Commercial Union*, "However, we can envision cases where, in the discretion of the trial court interest should be allowed although the amount of the loss is in dispute".

The court is of the opinion that plaintiff is entitled to recover interest from the date the proceeds of the policies became due pursuant to the terms of the policies.

A judgment in each action will be entered accordingly.