**Gerald MICHAEL, Plaintiff,**

v.

**NATIONAL SECURITY FIRE & CASU-ALTY COMPANY, Defendant,**

**North Mississippi Savings & Loan Association, Intervenor.**

**No. EC 78–24–K.**

United States District Court,
N. D. Mississippi, E. D.

Oct. 4, 1978.

Eugene B. Gifford, Jr., Booneville, Miss., for plaintiff.

Charles L. Sullivan, Clarksdale, Miss., for intervenor Gerald R. McLemore, Corinth, Miss., for defendant.

## MEMORANDUM OF DECISION

KEADY, Chief Judge.

The court has before it the motion of defendant National Security Fire & Casualty Company (National Security), and the cross-motion of plaintiff Gerald Michael and intervenor North Mississippi Savings & Loan Association (NMSL) for summary

judgment, both motions agreeing that there is no genuine issue as to any material fact and asserting that each party is entitled to judgment as a matter of law.

Plaintiff, on July 6, 1976, purchased fire insurance policy No. M13743245 in the amount of $15,000 from National Security to cover certain commercial property at Highway 4 in the Jumpertown Community, seven miles west of Booneville, Mississippi. NMSL was shown on the policy as loss payee and mortgagee. The policy became effective on August 3, 1976, after the first year's premium of $683.28 was paid in advance.

The insured property was partially destroyed by fire on April 3, 1977. Plaintiff executed the proper proof of loss forms, and on May 20, 1977, National Security issued its draft for $15,000 payable to plaintiff and NMSL. The property was immediately repaired using said funds.

On July 26, 1977, National Security mailed to plaintiff and to NMSL notice of cancellation[1] of its fire policy, providing that plaintiff's coverage would cease on August 3, 1977, and that NMSL's coverage would cease on August 7, 1977. Subsequently, on July 31, 1977, the newly-repaired commercial property was again struck by fire and totally destroyed. National Security has denied liability for losses sustained as a result of the second fire, and plaintiff now seeks $15,000 compensatory damages and $35,000 punitive damages.

Since the above facts are not disputed, the resolution of the issue turns entirely on the interpretation of the policy provisions, thus making this case appropriate for disposition on summary judgment. Mississippi substantive law governs the decision of this diversity case.

We begin with the principle, long recognized in Mississippi, that if an insurance policy contains an ambiguity, its interpretation should be resolved in favor of the insured as long as such interpretation is not unreasonable. *McLaurin v. Old Southern Life Ins. Co.*, 334 So.2d 361 (Miss.1976). See also *Pritchard v. Ins. Co. of N. A.*, 61 F.R.D. 104, 108 (N.D.Miss.1973); *Farr v. Sun Life Assurance Co. of Canada*, 351 F.Supp. 299, 302 (N.D.Miss.) aff'd 469 F.2d 1392 (5 Cir. 1972). The defendant insurer argues that the policy is clear and unambiguous and that its liability is specifically limited to $15,000, which is the face amount of the policy.[2] Thus, defendant's position is that after paying $15,000 on May 20, 1977, its liability was exhausted, and it cannot be found liable for any subsequent loss, payment for which would result in total disbursements more than the $15,000 obligation created by the policy.

Plaintiff, on the other hand, asserts not only that the policy itself is ambiguous, in that it fails to state clearly that payment of $15,000 before expiration of the policy period would terminate any further liability on the part of the insurer, but also that National Security's course of conduct after payment on the first loss and before notice of cancellation or termination, *i. e.*, failure to immediately cancel or terminate as pro-

---

1. "This is to notify you that the National Security Fire and Casualty Company of Elba, Alabama, elects to cancel and terminate its liability Under Policy Number M13743245 issued to addressee . . . said cancellation to take effect on 77–8–03 and by virtue of the conditions of said policy and this notice thereunder, such liability will cease and terminate at 12 Noon on that date.

"The excess of paid premium above the prorata premium for the unexpired term (if not tendered) will be refunded on demand."

2. The defendant argues that the following clause is a clear limitation on the extent of its liability:

In consideration of the provisions and stipulations herein or added hereto and of the premium above specified, this Company, for the term specified above from inception date shown above at noon (standard time) at location of property involved, and for such additional periods as the timely payment of premiums are made, *to an amount not exceeding the amount(s) above specified*, does insure the insured named above and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss. . . . (Emphasis added).

vided in the policy itself, reinforces a conclusion that notwithstanding the prior payment the insurer impliedly recognized the continuing validity of the policy.

It is noteworthy that National Security reserved to itself in the policy the right to cancel "at any time" by merely giving five days' written notice to the insured and ten days' written notice to the mortgagee. If National Security had been diligent in exercising this right immediately upon payment on the first loss, presumably neither plaintiff's nor NMSL's claims of continued coverage would have arisen upon the occurrence of the second fire. Nevertheless, such was not the case, and it is now the court's duty to decide whether the alleged ambiguity does in fact exist, and if so, whether it alone, or in combination with National Security's failure to send notice of cancellation until almost four months after the date of the first fire, will operate to fasten upon the insurer liability for the second loss. It appears that the Mississippi courts have never addressed the question of the extent of an insurer's liability for successive losses within the policy period when the policy does not explicitly exclude such liability.

■ After careful consideration of the language relied upon by the parties, see notes 1 and 2, supra, and the insurance policy as a whole, the court is of the opinion that the policy as written is ambiguous in that it fails to specify whether the coverage is provided on a $15,000 per occurrence basis for one year or whether payments totaling $15,000 constitute a limit of National Security's liability without regard to the number of losses or the time period of the policy.

The policy at no place states that payment of the face amount of $15,000 will automatically terminate further liability of the insurer for the duration of the policy period. Indeed, the notice provisions of the policy specify that even though the insurer has a right to cancel "at any time," such effective cancellation is dependent upon five days' prior notice to the insured and ten days' prior notice to the mortgagee.

The policy states simply that National Security agrees to insure the plaintiff for the actual cash value of the property at the time of loss "for the term specified [one year] . . . to an amount not exceeding the amount(s) above specified [$15,000]," without more specific language which could properly be construed as strictly limiting the insurer's liability to the face amount, no matter how many successive losses might occur. As the drafter of the instrument, it was fully within National Security's power to use such language as would clearly exclude the risk of further liability for successive losses. See *Home Owners Ins. Co. v. Keith's Breeder Farms, Inc.*, 227 So.2d 293 (Miss.1969), 43 Am. Jur.2d, Insurance § 279 (1969). We have previously held that under Mississippi law, "where 'the critical words [of an insurance policy] are ambiguous to the lay mind, "the insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than one which is not itself unreasonable."'" *Aerial Agric. Serv. of Montana, Inc. v. Till*, 207 F.Supp. 50, 57 (N.D.Miss. 1962); see also *America Southwest Corp. v. Underwriters at Lloyd's, London*, 333 F.Supp. 1333, 1338 (S.D.Miss.1971). Clearly, since National Security failed to explicitly limit its liability in case of successive losses which might aggregate more than the face amount of the policy, the insured's interpretation as providing a maximum amount of $15,000 for each loss during the term of the policy is not unreasonable.

■ Moreover, given our finding that the policy provisions regarding coverage for successive losses are ambiguous, the court further holds that National Security's course of conduct following the first loss and before the second reinforces the reasonableness of the plaintiff's interpretation of the policy. If National Security intended by its policy that all further liability should cease upon payment of the face amount without regard to the policy's unexpired term, it was incumbent upon the insurer to

notify forthwith both insured and mortgagee that it was terminating all further liability after payment for the first loss. This action was indeed required by the notice of cancellation provision contained in the policy.

The purpose of provisions or stipulations for notice to the insured is to prevent the cancellation of the policy without allowing the insured ample opportunity to negotiate for other insurance in its stead.

43 Am.Jur.2d, Insurance, § 404, at 449 (1969).

National Security waited to cancel the policy until five days before its expiration date. The notice itself specifically stated that the insurer had elected "to cancel and terminate *its liability*" (emphasis added) on August 3, 1977, and further that "such *liability* will cease and terminate at 12 Noon on that date." (Emphasis added). This notice, had there been no second fire before the date of termination of liability fixed by the insurer, would have permitted National Security to retain the unearned premium for the remainder of the policy term, contrary to the policy's Unearned Premium Clause[3] which permits recovery by the insured of the "pro rata unearned premium" for the remaining policy period. National Security's argument is, in essence, that although *liability* to the plaintiff existed until August 3 and to NMSL until August 7, 1977, thus permitting the insurer to retain the whole yearly premium after payment on the first loss, no *coverage* existed subsequent to the $15,000 loss payment. The court finds this interpretation to be strained at best, and wholly without merit. Moreover, National Security's statement in its July 26, 1977 cancellation notice that the unearned pro rata premium would be refunded on demand was an empty gesture under the circumstances since no unearned premium would have existed upon expiration of the policy period. Given National Security's express recognition of continued liability in the cancellation notice, we hold that National Security is liable for losses sustained in the fire on July 31, 1977, in the amount of the $15,000 face value of the policy.[4] We hold further, in the exercise of our discretion, that National Security's refusal to pay plaintiff's claim justifies an award of prejudgment interest in the amount of 8% per annum from the date of loss until payment thereof is made. *Charles Stores, Inc. v. Aetna Ins. Co.*, 327 F.Supp. 525 (N.D.Miss.1971), *aff'd* 490 F.2d 64 (5 Cir. 1974); *Commercial Union Ins. Co. v. Byrne*, 248 So.2d 777 (Miss.1971).

Plaintiff and intervenor also seek punitive damages for what they allege to be a willful and wanton refusal to discharge clear contractual obligations. Although an insurance company may not "intentionally and unreasonably refuse payment of a legitimate claim with veritable impunity," *Standard Life Ins. Co. of Indiana v. Veal*, 354 So.2d 239, 248 (Miss.1978), punitive damages are not proper if the insurer has a legitimate or arguable reason for failing to pay a claim. *Id.* Moreover, such damages may not be awarded absent a finding of "some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort." *Lincoln Nat. Life Ins. Co. v. Crews*, 341 So.2d 1321, 1322 (Miss.1977). Since this is a case of first impression in Mississippi, and no cases directly in point have been cited to the court or revealed by our own research,[5] National Security's rea-

---

**3.** This clause itself is not the perfect example of clarity in drafting:

UNEARNED PREMIUM CLAUSE: If a loss is paid under this policy, this insurance shall indemnify the Insured for loss of the pro rata unearned premium on the amount of such loss payment. This Company, however, may elect by written notice within sixty days after day of loss to reinstate this policy in the amount of such loss, and in consideration of such reinstatement, make no payment to the Insured as provided by this clause.

**4.** The express statutory provision of Miss.Code Ann. § 83–13–9 (1972), requiring ten days' written notice to effectively terminate a mortgagee's interest, lends support to our holding that National Security remained liable to NMSL as loss-payee until August 7, 1977.

**5.** We are not unaware of 44 Am.Jur.2d § 1633 (1969), which tersely states that "the insurer is

son for denial of plaintiff's claim can fairly be characterized as "legitimate" or "arguable," and, therefore, an award of punitive damages is inappropriate.

Let judgment be entered accordingly.

generally held liable at most only for the difference between the amount paid on the first loss and the sum named on the face of the policy . . . ." The cases cited in support of this statement, however, involve mutual insurance associations which impose personal liability upon their members rather than standard stock insurance corporations operated for profit, such as National Security, and are therefore inapposite to the case sub judice.