**Mary Lynda O'CONNOR, Plaintiff,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant.**

**No. DC82–73–NB–O.**

United States District Court,
N.D. Mississippi,
Delta Division.

Aug. 27, 1984.

Cliff Finch, Batesville, Miss., Ronald S. Cochran, Biloxi, Miss., for plaintiff.

Richard T. Lawrence, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This is a suit by the plaintiff insured under a group disability policy against the defendant insurer in which the plaintiff alleges that she is entitled both to proceeds under the policy for being totally disabled from any and all occupations, and to punitive damages because of the defendant terminating her disability benefits without just cause. The defendant has filed a motion for partial summary judgment on the issue of punitive damages and has submitted three alternative grounds in support of the motion:

(1) There was an arguable reason not to pay the claim and, therefore, punitive damages are not proper;

(2) The insurer is not liable to the plaintiff for punitive damages under the plaintiff's theory of a fiduciary relationship;

(3) The claim for punitive damages is barred by the statute of limitations.

In 1962, the plaintiff began employment with Chromcraft Furniture Company in Senatobia, Mississippi. The plaintiff was involved in an automobile accident and suffered certain injuries to the head in 1964. Shortly thereafter, the plaintiff began to experience seizures and painful headaches, and upon her doctor's advice left her employment. The plaintiff then filed a disability claim with Equitable Life Assurance Society of the United States (hereinafter Equitable), the carrier of Chromcraft's employee group insurance policy. She received disability payments of $50.00 per month under the Equitable policy from October, 1977 until October, 1980, at which

time the defendant advised Mrs. O'Connor that her disability payments would be terminated.

The Equitable policy provides for an "easy test" during the first thirty months of disability in which the claimant need only demonstrate an inability to perform any and every duty pertaining to the employment engaged in at the time of disability. After the first thirty months of disability, a "strict test" is applied in which the claimant must be totally disabled for *any* occupation for which he may be reasonably qualified by education, training or experience. Equitable paid the plaintiff's claim under the "easy test" period. Sometime after the "easy test" period expired Equitable terminated the $50.00 per month benefits by letter dated October 20, 1980, advising the plaintiff that the medical evidence did not support a claim of total disability under the "any employment" test.

Following the termination of benefits, the plaintiff's representatives sent several letters to Equitable requesting that the disability payments be resumed. Equitable responded to these letters by requesting that plaintiff furnish current objective medical evidence of her disability under the "any employment" test. The record reveals no medical evidence furnished by the plaintiff which supports disability under the "any employment" test.

In March of 1982, plaintiff filed this suit seeking disability benefits and punitive damages. Equitable defends on the grounds that the plaintiff is not disabled within the meaning of the policy and that the plaintiff failed to furnish proof of the alleged disability as required by the policy.

In the present motion, the defendant claims that it is entitled to a partial summary judgment dismissing the claim for punitive damages. The defendant contends that since it has an arguable reason to deny the plaintiff's claim, punitive damages are improper under the rule enunciated in *Consolidated American Life Insurance Co. v. Toche,* 410 So.2d 1303, 1306 (Miss. 1982). Additionally the defendant contends it is entitled to partial summary judgment, since the claims for extra contractual and punitive damages are barred by the one-year statute of limitations set forth in Miss. Code Ann. § 15–1–35 (1972).

The general rule which appears to prevail in this jurisdiction is that if, as a matter of law, there is an "arguable reason" for the insurance company to deny liability on the policy, punitive damages are improper regardless of whether the insurance company prevails or loses on the issue of liability. *See Henderson v. United States Fidelity & Guaranty Co.,* 620 F.2d 530, 536 (5th Cir.1980); *Reserve Life Insurance Co. v. McGee,* 444 So.2d 803, 809 (Miss.1983); *Standard Life Insurance Co. of Indiana v. Veal,* 354 So.2d 239, 248 (Miss.1978). The "arguable reason" standard is necessarily vague, thus mandating a case by case factual determination.

In resolving cases dealing with bad faith, and particularly when determining whether punitive damages are proper, the Mississippi Supreme Court has held that if a genuine dispute over coverage exists, such dispute furnishes an arguable reason for refusing a claim and therefore punitive damages are improper. *See Consolidated American Life,* 410 So.2d at 1305. The court has also held that an arguable basis to deny payment exists when there is an issue as to whether the plaintiff has satisfied a condition or other term of the policy.[1] An arguable reason to deny a claim may exist when a doctor's statement raises a factual issue of disability. *Peel v. American Fidelity Assurance Co.,* 680 F.2d 374, 377 (5th Cir.1982). In *Peel* a physician had reported to the insurance company that, in his opinion, the plaintiff was not disabled. The court found that this report provided the insurance company with an arguable basis for denying the claim and held that

---

1. *New Hampshire Insurance Co. v. Smith,* 357 So.2d 119 (Miss.1978). The court held that the insurance company was entitled to either a medical report or an authorization to consult the insured's physician under a policy condition. Since the plaintiff offered neither, the defendant had not been wrong in refusing to pay the claim.

the trial court correctly refused to submit the punitive damages issue to the jury. *Id.* at 376.

In the instant case, the record shows that on October 20, 1980, the plaintiff received a letter from the defendant which advised the plaintiff that her $50.00 monthly disability payments would be terminated because the medical evidence in her file showed she was not disabled under the provisions of the policy. At that time Equitable's file contained a letter from Doctor Adams that the plaintiff was disabled; a statement from Doctor Powell that the plaintiff was not disabled; statements from an employee of Chromcraft to the effect that the plaintiff regularly was seen driving, sun bathing, shopping, and that she recently had given birth; and a report from an independent investigating firm, Equifax, hired by Equitable reporting on the plaintiff's recent activities. Based on this cumulative information, the defendant made the decision to stop the benefits to the plaintiff. When the plaintiff made an inquiry and a request that her benefits be resumed, Equitable advised the plaintiff that she should present current objective evidence of her present disability under the "any employment" test as provided in the policy. There is evidence in the record that Dr. Irvin Klein, an in-house physician of Equitable, suggested to Equitable supervisors that before a change in the plaintiff's status was made by Equitable, *i.e.*, before her benefits terminated, a new examination of her should be performed at the company's expense by a neurologist. Defendant concedes that its own doctor's advice was not followed, but that the benefits were terminated anyway.

■ The rule was announced in *Lincoln National Life Insurance Co. v. Crews,* 341 So.2d 1321, 1322 (Miss.1977), that the mere fact that the insurer rejects a claim under the provisions of its policy and defends a suit filed by the insured and loses the suit does not justify imposition in itself of punitive damages. In *Michael v. National Security Fire & Casualty Co.,* 458 F.Supp. 128 (N.D.Miss.1978), it was noted that puni-

tive damages are not proper if the insurer has a legitimate or arguable reason for failing to pay the claim. Furthermore, the failure must constitute "some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort." *Id.* at 131.

It is the opinion of the court that the medical information in the file of the plaintiff, coupled with the plaintiff having passed from the "easy test" period of thirty months into the "strict test" period, were enough to make an arguable case and a legitimate issue as to whether the plaintiff was currently disabled under the "any employment" test. The defendant could have asked the plaintiff for additional medical information or for an examination by a physician of the defendant's choice before stopping benefits. Perhaps that course would have been the more considerate one to pursue; but, the entire record considered, the court cannot find that the defendant was guilty of insult, abuse and an intentional tort for choosing to stop the benefits and then asking the plaintiff to provide evidence of disability under the "strict test" requirements of the policy. *Cf. Michael,* 458 F.Supp. at 131.

■ After the October 20, 1980, letter to the plaintiff notifying her of the termination of her benefits, several additional letters were mailed to her by the defendant asking for current medical evidence of present disability for any employment. The policy provides that current proof of disability must be provided, as follows:

PROOF OF CLAIM. Written proof of total disability must be furnished to the Society at its Home Office in the City of New York on the Society's forms within ninety days after the termination of the first monthly period of benefits following the expiration of the qualifying period. *Subsequent written proof of the continuance of such disability must be furnished to the Society at such intervals as the Society may reasonably require* (emphasis added).

The plaintiff has yet, as far as the record shows, to produce any such evidence. Of

course, this is not to say the plaintiff would be unable to produce any such evidence in the future or that she is not entitled to disability benefits under the policy. However, for purposes of the defendant's motion for partial summary judgment as to punitive damages, the court is of the opinion that there is no material issue of fact as to the nonexistence of either abuse or an independent tort on the part of the defendant which amounts to gross negligence, and that the motion therefore should be granted.[2]

Since the defendant's first argument in support of its motion is persuasive to the court, it is not necessary for the court to reach a decision on the merits of the other arguments and they will not be dealt with here. An order in accordance with this opinion will issue.

---

2. Plaintiff contends that the Mississippi Supreme Court's decision in *Reserve Life Ins. Co. v. McGee,* 444 So.2d 803 (Miss.1983) precludes this court from granting partial summary judgment on the issue of punitive damages. In particular, the plaintiff relies on the following language in the *McGee* opinion: *"At the conclusion of the evidence* (emphasis added), the trial court ... should determine whether or not, as a question of law, the insurer had a legitimate or arguable reason to deny payment of the claim." *Id.* at 809. The plaintiff reasons that a partial summary judgment on punitive damages is premature because *McGee* mandates that all evidence be heard *at trial* prior to determining the propriety of a punitive damages instruction. We refuse to interpret *McGee* in this manner. The Federal Rules of Civil Procedure empower this court to grant summary judgment or partial summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c). We see no logical reason why this court should carve out a special exception to the normal procedures regarding summary judgment for bad faith insurance cases. Accordingly, we refuse to do so.

Taken to its logical conclusion, plaintiff's interpretation of *McGee* would create an across-the-board rule precluding all courts in Mississippi from granting partial summary judgment on the issue of punitive damages in bad faith insurance cases. Assuming arguendo that plaintiff's interpretation of *McGee* is correct, we would view such a rule as "procedural"—interfering as it does with the application of rule 56—and thus not binding on federal courts under the rule of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The situations in which this court may grant summary judgment are clearly controlled by rule 56 of the Federal Rules of Civil Procedure. As the court stated in *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965):

When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie choice: the court has been instructed to apply the Federal Rule and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions (footnote omitted).

While we maintain our opinion that the plaintiff's interpretation of *McGee* is wrong, in any event, we would be reluctant to saddle the federal courts with the rule proposed by the plaintiff.