WESTERN LINE CONSOLIDATED
SCHOOL DISTRICT, Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY
and CNA Financial Corporation,
Defendants.

Civ. A. No. GC 82 211 GD D.

United States District Court,
N.D. Mississippi,
Greenville Division.

March 18, 1986.

---

J. Robertshaw, Robertshaw, Terney & Noble, Greenville, Miss., for plaintiff.

John L. Low, IV, Watkins & Eager, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This is a suit by Western Line School District (Western Line) against Continental Casualty Company (Continental) and its parent corporation, CNA Financial Corporation (CNA) for an alleged bad faith refusal to pay benefits, consisting primarily of attorney's fees, under an indemnity insurance policy insuring Western Line for its costs and any judgment awarded against it in actions by third parties. Western Line is a school district organized under the laws of the state of Mississippi and comprising portions of Washington and Issaquena Counties. Continental and CNA are corporations with their principal place of business at 1 CNA Plaza, Chicago, Illinois. Since the parties are diverse and the amount in controversy, exclusive of interest and costs, exceeds $10,000, this court has jurisdiction pursuant to 28 U.S.C.A. Section 1332. In this bench trial the court proceeds with its findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

In August 1974, Western Line purchased a school board legal liability policy issued by International Insurance Company. This coverage was subsequently replaced, on recommendation of insurance agent, Moyse & Moyse & Wasson, with the policy in suit (plaintiff's ex. 3) entitled Board of Education Liability Including School District Reimbursement Policy, effective September 8, 1975. This policy provided Western Line and other insureds liability protection and indemnification in the event of a claim or suit against it by third parties. Under the policy, the insured was obligated to retain its own counsel and pay any fees, costs, expenses or any possible judgment which might be rendered. Upon "disposition", the defendants, the insurers, are then obligated to indemnify or reimburse the insured for any cost or judgment paid, less a $2,500 retention per claim. At issue in this suit are three lawsuits filed against Western Line by: (1) Ray Joe Quong; (2) a class action suit in the name of Brenda Crawford; and (3) a lawsuit relative to re-employment filed by Chariety Wright. Western Line successfully defended all three suits but brings this action to recover

---

1. This case was filed on August 31, 1982 and was initially assigned to former Chief Judge William C. Keady. Judge Keady entered a memorandum opinion on February 12, 1983 wherein the plaintiff Western Line was granted partial summary judgment on the Quong claim in the amount of $6,489 with the issue of punitive damages being reserved for the trier of fact.

On March 22, 1983 a second memorandum opinion was entered denying prejudgment interest on the Quong claim and reserving the question of the meaning of any ambiguous language in the insurance policy for the trier of fact. The case was assigned to this court by order dated November 4, 1985.

certain losses, primarily attorney's fees, not yet paid by the insurer and to seek punitive damages for payments that were delayed even though the defendant did not contest the coverage or amount owed. It is significant that many of the events that constitute the basis of plaintiff's claim for reimbursement occurred subsequent to the filing of the complaint herein on August 31, 1982.

Western Line originally sued Continental to be reimbursed for losses in defense of the actions filed by Quong and Crawford plus prejudgment interest, attorney's fees and punitive damages. On February 1, 1983, the court ruled that a pertinent provision of the policy was ambiguous and that the matter could not therefore be disposed of on a motion for summary judgment. However, the court granted partial summary judgment as to amounts owed on the Quong claim since the defendants did not contest owing this amount. The plaintiff submitted a motion to amend the judgment by awarding prejudgment interest on the February 1 award, but this motion was denied on March 22, 1983. Subsequently, Western Line filed an amended complaint adding CNA as a defendant. Western Line then filed a second motion for partial summary judgment seeking $31,599.69 on February 28, 1984 incurred in the defense of the Crawford claim. The defendants did not resist this motion and the plaintiff withdrew the motion without prejudice. The parties stipulated that, as a result of mistake, Western Line failed to include invoices for $6,413.30 on the Crawford claim. In August 1984, Western Line filed a second amended complaint, adding a third claim for fees and expenses incurred in defending the Wright claim.

## THE QUONG CLAIM

Quong initiated his actions against Western Line by filing a bill for an injunction in the Chancery Court of Washington County seeking to require Western Line to reinstate him as assistant principal at Glen Allan School. Western Line's demurrer was sustained and the case was appealed to the Supreme Court of Mississippi. Quong, a Chinese American, subsequently filed a charge of racial discrimination with the EEOC. While this action was pending, Quong's appeal to the Mississippi Supreme Court was dismissed by that court on January 30, 1980. Western Line then billed Continental on February 1, 1980 for $4,200.95 for legal fees incurred to that date in defending both the chancery court action and the appeal to the supreme court as well as the EEOC charge. This amount was paid on February 22, 1980, less the $2500 retention.

Quong then filed an action alleging racial discrimination in federal district court which was tried on August 24 and 25, 1981 and judgment was entered for Western Line on August 26. On September 5, 1981, Western Line filed a claim with Continental for the expenses incurred in defending that action. This claim was paid on April 28, 1982 after a lapse of 235 days. The federal district court decision was appealed to the Fifth Circuit and was affirmed on July 29, 1982. On August 2, the school district filed a claim with Continental for $6,489.90. This claim was received by Continental on August 5, 1982. Payment not being made by August 31, 1982, Western Line filed the suit, *sub judice*. On February 1, 1983 partial summary judgment was entered in Western Line's favor. Plaintiff sought to amend the judgment by asking the court to order summary judgment upon a separate claim and by awarding prejudgment interest on the February 1 award. The court refused to enlarge its grant of summary judgment and likewise refused to award prejudgment interest since the record according to the judge then presiding did not reveal that the defendant acted in bad faith or frivolously refused to pay the claim in dispute. Continental paid Western Line on May 9, 1983, a total lapse of 280 days between the time Western Line requested the payment and the time of actual payment.

## THE CRAWFORD CLAIM

This was a class action in the name of Brenda Crawford filed against Western

Line on January 25, 1980. On November 12, 1981, the defendants requested an update on attorneys' fees and expenses incurred and estimated future expenses. On November 16, 1981, Western Line furnished an itemized statement of expenses through June of 1981 in the amount of $13,960.17 and requested losses be paid on a quarterly or semi-annual basis. On May 5, 1982, Western Line submitted an additional itemization of $18,548.30 and made a formal request for this amount less $2,500 retention. On May 25, 1982, Continental denied the school district's request for interim payments restating its policy expressed in letters dating back to January 24, 1980 to the effect that Continental did not pay interim costs but preferred to make payments at the conclusion of the file or at the conclusion of litigation except in "rare instances." (See defendants' exs. 1, 2 and 3). Continental again restated its policy on July 2, 1982 saying that interim payments were to be made only at its option pursuant to the provisions of the insurance policy.

On May 29, 1982, the United States District Court entered judgment dismissing the Crawford class action suit with prejudice. Thereafter, Western Line made several requests for payment and formally demanded payment on August 2, 1982. On August 31, 1982, Western Line filed its action *sub judice* against Continental seeking reimbursement for its costs incurred in the Crawford action as well as those costs incurred in the Quong lawsuit. As discussed previously, on February 1, 1983, in the case *sub judice* the federal district court denied partial summary judgment as to the Crawford claim, stating that an ambiguity existed in the insurance policy and that resolution of the issue was one for the trier of fact. On May 2, 1983, Continental issued a check in the amount of $6,629.06 for a loss occurring on January 28, 1980. Subsequently, the May 29, 1982 judgment dismissing the Crawford class action with prejudice was appealed to the Fifth Circuit, reversed and remanded and final judgment was entered on February 24, 1984 in federal district court pursuant to the Fifth Cir-

cuit opinion of July 18, 1983. Consequently, Western Line filed its motion for partial summary judgment in the case *sub judice* seeking $31,599.69 for incurred losses on the Crawford claim which was not resisted by Continental, and subsequently $30,399.92 was paid after delays of 107 days. Western Line later withdrew its motion for partial summary judgment but noted that the payments received did not include interest and stated that it was withdrawing the motion without prejudice to both its claim for interest and punitive damages.

## THE WRIGHT CLAIM

Chariety Wright, a teacher employed by Western Line was given notice that she would not be offered an employment contract for the school year 1983–84 on April 6, 1983. Pursuant to state law she was given a hearing before the school board, and from the record established in subject hearing she prosecuted appeals to the Chancery Court of Washington County and ultimately to the Mississippi Supreme Court. On July 7, 1983, Western Line concluded that the legal cost of the suit would exceed the $2,500 retention and notified Continental of the suit. Subsequently, Wright filed an EEOC racial discrimination suit and another racial discrimination suit with the office of Civil Rights of the U.S. Department of Education. The chancery court ruled in Western Line's favor on November 15, 1983 and on December 29, 1983, Wright appealed to the Mississippi Supreme Court. The chancery court's decision was affirmed without opinion on February 5, 1986. While the appeal to the supreme court was pending, Wright filed a second charge with the EEOC in which the EEOC made determinations that no reasonable cause existed to support the charge filed. Shortly thereafter, the time to file an action in federal district court expired.

Western Line filed a claim with Continental for $7,296.07, less the $2,500 retention on April 4, 1984. Thereafter, on August 23, 1984, Wright filed yet another EEOC charge to which the EEOC again stated no reasonable cause existed to support the

charge in its ruling issued on February 28, 1985. The time to file suit with respect to that charge in federal district court likewise expired shortly thereafter.

## THE INSURANCE POLICY

The pertinent provisions of the policy are quoted below. Paragraph I (b) provides:

[I]f during the policy period any claim or claims are made against [the insured] as a result of any Wrongful Act occurring during the policy period, the Insurer will pay on behalf of, in accordance with the terms of this policy, all loss which the School District shall become legally obligated to pay.

Paragraph III (d) provides:

Loss shall mean any amount which the Assured or School District are legally obligated to pay ... and shall include but not be limited to damages, judgments, settlements and cost of investigation and defense of legal actions ..., claims or proceedings and appeals therefrom....

Paragraph VI (b) of the Liberalization Endorsement provides:

Insurer may at its option and upon request, advance on behalf of an Assured and/or School District fees, costs and expenses which have been incurred in connection with the claims made against an Assured, prior to disposition of such claims....

No judgments were entered against Western Line with respect to any of the three claims. Therefore, with the exception of a part of the Wright claim, the parties do not dispute either that the claims are covered or the amount of the loss. The only controversy is with respect to the interpretation of Paragraph VI of the policy where it is stated that Continental may, at its option, advance fees, costs and expenses incurred by the school district "prior to disposition" of such claims. The defendants contend that "disposition" means upon final termination of any claim including any possible appeals. Western Line contends that "disposition" must be distinguished from a final disposition of a case on appeal and argues that a "disposition" occurs at the trial court level and that Continental is responsible for payment of Western Line's fees and expenses once a judgment has been entered at that level, regardless of whether the matter is appealed.

At trial, Joe Ray Quong, president of the Board of Trustees of Western Line and the plaintiff in the claim against Western Line bearing his name, testified that Western Line derives its funding from local, state and federal sources. Quong testified that, due to Western Line's budget, it carries insurance to cover its legal fees and expenses incurred in defending suits brought against it because the school district can budget an insurance premium but not amounts that suits filed against it might cost. David Dunaway, employed by Western Line as its superintendent, testified that the costs of legal defense expenses can only be paid from the local sources of funding, district maintenance funds. Dunaway also testified that Western Line had incurred $15,882.22 to date in the case *sub judice* though it had not yet billed Continental. Neither Dunaway nor Quong held their respective positions at the time of the purchase of the policy so that neither were able to testify as to the intent of the parties when the policy was entered into. Harold Adams, superintendent of Western Line when the policy was purchased, is now deceased.

William R. White, employed by Continental as its legal specialist in Dallas, Texas, testified that claims on Board of Education's liability policies, or BEL claims, are not normally paid on an interim basis. He gave four basic reasons for this policy. First, he stated that a question of coverage always existed since certain portions of the claims might consist of items excluded in the exclusion provision of the policy. Second, White testified that the costs of defense are not separated from the award against the insured when a claim is made. Since a question of coverage always exists when an award is entered against an insured, then the insured prefers to wait to the conclusion of the case to determine if it is fully responsible for the amount of the

judgment award even though it knows it must reimburse the insured for all of its costs of defense. Third, White testified that certain mechanical problems exist with regard to making interim payments because it increases the amount of administrative work and man-hours needed to process a claim. Finally, White stated that the insured often made errors in calculations, as occurred in regard to the Crawford claim, and that it was therefore best to wait to the conclusion of the litigation and review all calculations at one time.

As to the delays in making payments once all appeals had been exhausted and it was clear that no further appeal would be taken, White testified that his office had only a $10,000 authority and that, if a claim exceeded that amount, the file would have to be prepared and sent to the home office in Chicago to be reviewed by personnel there. As to the delays of 107 days in paying the Crawford claim and the 280-day delay in paying the Quong claim, White stated that he could give no reason other than the defendants were relying on the advice of counsel after the case *sub judice* was filed. Counsel allegedly advised the defendants that payments should be withheld since Western Line had filed suit in excess of the amount the defendants believed they owed when the claims for punitive damages and interest were taken into account.

White also testified as to the difference between a liability policy and an indemnity policy. As to the liability policy, White testified that the insurer pays all defense expenses generally as they come due. However, White stated that indemnity policies are different in that the insured pays the expenses and selects its own counsel, and the insurer then must reimburse the insured for the attorney's fees expended as well as any awards for covered claims.

■ Considering the testimony, the court finds that the insurer is entitled to a reasonable amount of time to assess the claim for reimbursement under an indemnity policy. However, in this case, no awards were entered against Western Line

so that Western Line only sought to be reimbursed for its attorney's fees and expenses. In such a case, the court finds no legitimate reason for an excessive delay in paying a claim of this nature. It further is the opinion of the court that all claims presented by Western Line to Continental were liquidated claims as clearly reflected by the plaintiff's exhibits 4, 5 and 6.

## CONCLUSIONS OF LAW

### The Policy Language

■ As a general rule, insurance policies are to be construed in accordance with general principles of contractual construction. *See Porter v. American Optical Corp.*, 641 F.2d 1128 (5th Cir.) *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). Like other written contracts, insurance policies are construed most strongly against the drafter, and any ambiguity found to exist in an insurance policy must be construed against the insurer and in favor of the insured. *Brander v. Nabors*, 443 F.Supp. 764 (N.D.Miss.), *aff'd*, 579 F.2d 888 (5th Cir.1978); *McLauren v. Old Southern Life Ins. Co.*, 334 So.2d 361 (Miss.1976). Whether an ambiguity exists is a question of law for the court to decide. *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1175 (5th Cir.1981). Once an ambiguity is determined by the court to exist, the question of its meaning is one for the trier of fact. *Id.* at 1175. In the case *sub judice*, the court ruled on February 1, 1983 that the phrase "prior to disposition" in Paragraph VI (b) of the policy could be "easily interpreted as disposition at trial or on appeal...." This court concludes that phrase is ambiguous. The court must now determine its meaning from the evidence presented at trial as to the intent of the parties, the custom in the industry and the rules of construction stated previously.

■ The Random House College Dictionary, 1973 Edition, defines "disposition" as "the final settlement of a matter." Black's Law Dictionary, 4th Edition, defines the words "dispose of" as "To exercise finally, in any manner, one's power of control

over...." However, with reference to decisions announced by a court, the judge's ruling, regardless of the level of resolution, is commonly referred to as a disposition, or a final settlement of a matter at that particular level. In *Calhoun v. United States*, 647 F.2d 6, 10 (9th Cir.1981), the Ninth Circuit Court of Appeals interpreted the word "disposition" as it appeared in Rule 4 (a) (4) of the Federal Rules of Appellate Procedure. In that rule, the word "disposition" is used with reference to the ruling on post-judgment motions. The Ninth Circuit ruled that the word, as used in the rule, meant "announcement of the court's decision on the motion." 647 F.2d at 10. The phrase "prior to disposition" used in the policy could well mean prior to a disposition, indicating a disposition at the trial court level, or prior to the final disposition, indicating a disposition when all of the avenues of appellate review that are available to the parties have been exhausted.

In *Ex Parte Russell*, 80 U.S. 664, 13 Wall 664, 20 L.Ed. 632 (1871), the issue was whether a statutory two-year period began running from the date of the judgment in the court of first impression or whether the period was tolled while an appeal was pending. The provision stated:

> That the said court of claims, at any time while any suit or any claim is pending before or on appeal from said court, or within two years next after the final disposition of any such suit or claim, may, on motion, on behalf of the United States, grant a new trial in any such suit or claim, and stay the payment of any judgment therein, upon such evidence ... as shall reasonably satisfy said court that any fraud, wrong or injustice in the premises has been done to the United States....

80 U.S. at 668, 13 Wall. at 668, 20 L.Ed. at 633–34. The Supreme Court ruled that "final disposition" meant the end of litigation or the termination of an appeal. *Id.* 80 U.S. at 669, 13 Wall. at 669, 20 L.Ed. at 634.

In the policy in question, however, the drafter of the policy spoke not of "final disposition", which indicates a ruling at the last stage of appellate review sought and gained by the appellant. Instead, the drafter only spoke of "disposition" and failed to specify the judicial level or levels meant to be encompassed within that term.

The law of Mississippi is clear that the terms of an insurance policy are to be construed in the light of the purposes for which it was designed to protect. *Monarch Insurance Company of Ohio v. Cook*, 336 So.2d 738, 741 (Miss.1976); *Griffin v. Maryland Casualty Company*, 213 Miss. 624, 57 So.2d 486, 489 (1952); *Fleming v. Travelers Insurance Company*, 206 Miss. 284, 39 So.2d 885, 887 (1949). The insurance policy in question was drawn to not only reimburse the school district for any judgment or awards entered against it but also to indemnify the insured for its attorney's fees and expenses incurred in defending those lawsuits. The court reasons that the insurer could have easily inserted a provision that it would not have to reimburse the insured prior to "final disposition" of a file. Language of this nature would be reasonable with respect to a judgment rendered against the insured since the award, on appeal, might be reversed and rendered in favor of the insured. However, with respect to the insured's attorney's fees, filing costs and other miscellaneous expenses incurred in defending the suit, the court can discern no reasonable basis why an insurer would draft, and an insured would accept, a provision deferring payment on such expenses when the attorney's fees were deemed reasonable and no question existed as to whether the lawsuit filed against the insured was excluded by a policy provision. Officials of Western Line testified that one of the primary reasons behind the purchase of the insurance policy was to enable the school district to budget all of the litigation expenses as well as any insurance premium expenses the district might incur within a given year. Particularly at the federal level, a trial court decision may be pending before the circuit court of appeals and possibly, the U.S. Su-

preme Court for several years. If the insured's cost of litigation and attorney's fees were not reimbursed after a decision at each judicial level, one of the essential purposes for purchasing the policy would be rendered a nullity. Further, the delay of payment for attorney's fees and expenses until the final appeal is exhausted would allow the insurer to reap the benefit of receiving interest on substantial funds prior to payment at the insured's added expense. This is particularly true when the market rate of interest is at a considerably higher level than the legal rate of interest which the insurer would have to pay to the insured for any delay in payment after a full and final disposition. At one point in the early part of this decade, interest rates peaked at a level near 20% whereas the legal rate of interest in Mississippi stood at around 8%. It is inconceivable to this court that this school district, or any other, would agree to such inequitable terms.

The defendants' characterization of the policy as one of indemnity rather than liability and the reasons advanced by the defendants' legal specialists in not making payments on BEL policies prior to conclusion of all the litigation does not, in the court's eyes, weigh heavily to indicate the parties' intent that reimbursement would not be made until all litigation had ceased with respect to a particular lawsuit. The court understands the defendants' desire to substantiate that the lawsuit involved a matter covered by the policy and to determine the reasonableness of attorney's fees

expended. However, resolution of these matters should not require lengthy deliberations. The court accepts the fact that figures must be checked for errors in calculation and that the payment of claims prior to final disposition would result in additional paper-work. However, weighing these factors expressed by the defendants to demonstrate their intent that "disposition" meant the conclusion of all litigation against the plaintiffs' evidence to demonstrate its position that "disposition" meant a disposition at the trial level, the court concludes that the apparent intention of the parties is best expressed by the interpretation advanced by the plaintiff. In reaching this conclusion the court construes the terms of the insurance policy in light of the purposes for which they were designed.

In a case construing the provision of this particular insurance policy, the Fifth Circuit Court of Appeals ruled that when the terms of the policy are susceptible to two interpretations, the language must be construed more strictly against the insurer as the drafter of the disputed provisions. *Starkville Municipal Separate School District, Et Al v. Continental Casualty Company,* 772 F.2d 168, 170 (5th Cir. 1985);[2] *City National Old Line Insurance Company v. Brownlee,* 349 So.2d 513 (Miss.1977). In the case *sub judice* this court must take into account the clear intent of the parties and in so doing holds that the term "disposition" as it appears in paragraph VI (b) of the liberalization endorsement means disposition at each stage of a proceeding.[3] The court accordingly

2. In *Starkville Municipal Separate School District v. Continental Casualty Company, supra,* the Fifth Circuit Court of Appeals, held that the provisions of the policy excluding "fines imposed by law, or matters which shall be deemed uninsurable by law," excluded claims for punitive damages made by third persons from coverage. The Circuit Court, in reversing the trial court, held that the foregoing policy provision did not exclude attorney's fees and expenses incurred by the school district in defending claims for punitive damages from coverage under the policy. The Appellate Court specifically stated "If CNA intended to exclude these other costs from the policy's coverage it needed to do so more explicitly...." *Id.* at 170.

3. A federal district court in the District of Hawaii in a recent case construing practically identical provisions in an insurance policy reached the same results. The court held that language identical to that contained in paragraph VI (b) in the case *sub judice* created an ambiguity and should be construed against the insurer. The court ruled that the attorney's fees and expenses should be advanced by the insurer as they were incurred by the insured. The court "reasoned that" a director and officer's policy which did not provide for the payment of attorney's fees until final judgment—when such suits can last for years and cost astronomical sums to defend—would be virtually impossible to sell to reasonable officers and directors, for it would

holds that entry of judgment by a trial court or the entry of a final opinion by an administrative board is a disposition under the terms of subject insurance policy.

## PUNITIVE DAMAGES

 The court has expressed its opinion that an ambiguity existed in the policy with respect to the word "disposition" in that the provisions as stated in paragraph VI (b) of the liberalization endorsement contained in subject policy of insurance were susceptible to two different interpretations. In Mississippi, punitive damages are not to be awarded if the entity to which the damages are sought to be imposed had a reasonably arguable basis for its acts. *Blue Cross and Blue Shield of Mississippi, Inc. v. Campbell,* 466 So.2d 833, 844 (Miss.1984); *Standard Life Insurance Company of Indiana v. Veal,* 354 So.2d 239, 248 (Miss. 1977). In this diversity case, the court is *Erie* bound and must apply the substantive law of Mississippi. The court reasons that by definition an ambiguous clause is subject to two different interpretations and in the case *sub judice* it is concluded that the carrier had a reasonably arguable basis to deny payment on all claims submitted by the plaintiff that had not been finally adjudicated by the ultimate conclusion and finalization of all available appellate processes. It is the opinion of this court that the carrier had a reasonably arguable basis to deny payment of those claims that were at various appellate stages when the billings were submitted to Continental.

The proof as to the delay in payment by Continental of those claims that were finally disposed of by concluding all available appellate remedies during the pendency of the present litigation was that those payments were delayed upon the advice of counsel. Admittedly, the present suit was pending at all times pertinent to these claims and the plaintiff was at all times persistent in its claim for punitive damages. The Quong claim was the primary claim in this category with final payment

being made some 280 days after the Fifth Circuit Court of Appeals affirmed the decision of the district court. A number of courts have held that "good faith reliance upon the advice of counsel may prevent imposition of punitive damages." *Stanton By Brooks v. Astra Pharmaceutical Products,* 718 F.2d 553, 580 (3rd Cir.1983); *Henderson v. United States Fidelity & Guaranty Company,* 695 F.2d 109, 113 (5th Cir.1983); *see also* 22 Am.Jur.2d Damages, Section 253 (1965). This court is persuaded that good faith reliance on the advice of counsel is in fact a defense to an award of punitive damages especially as in the case *sub judice* where active and strenuously contested issues were being litigated. The court accordingly holds that the award of punitive damages is inappropriate. The court therefore does not reach the question as to the corporate status of Continental Casualty Company as a wholly owned subsidiary of the parent company CNA Financial Corporation. It is further significant that in *State Farm Fire & Casualty Company v. Simpson,* 477 So.2d 242, 253 (Miss. 1985), the Mississippi Supreme Court held that an award of attorney's fees in a case involving punitive damages is only appropriate in the event punitive damages are awarded. In essence, according to the prevailing rule in Mississippi, punitive damages and attorney's fees must stand or fall together in litigation where both awards are sought by plaintiffs.

## THE WRIGHT CLAIM

 Save and except punitive damages and prejudgment interest, the only disputed amount before the court in the case *sub judice* is the sum of $2,888.70 in fees and expenses claimed by the plaintiff relative to the hearing had before the Western Line Consolidated School Board on or about April 25, 1983. The plaintiff contends that this amount is compensable as a loss under the terms of subject policy of insurance while the defendant contends that the provision became operative only upon the fil-

not truly protect the insureds from financial harm caused by suits against them." *Okada v.*

*MGIC Indemnity Corporation,* 608 F.Supp. 383 (D.C.Hawaii 1985).

ing of suit by the aggrieved employee Chariety Wright. The hearing before the school board or hearing officer was held pursuant to Section 37–9–111 of the Mississippi Code of 1972 subsequent to the employee's receipt of notice that she would not be offered a contract of employment for the ensuing school year pursuant to Section 37–9–105 of the Mississippi Code of 1972. The employee obviously exercised her rights pursuant to Section 37–9–109 of the Mississippi Code of 1972 and the subsequent hearing was had accordingly. It is apparent to this court the subsequent judicial proceedings in the Chancery Court of Washington County and ultimately before the Supreme Court of Mississippi were appeals prosecuted by the aggrieved employee pursuant to Section 37–9–113 of the Mississippi Code of 1972. The foregoing statutory provisions clearly provide that all appeals shall be limited to the record as established in the hearing before the school board. The proceeding in the Chancery Court of Washington County was an appeal and specifically was not a de novo hearing. It is the opinion of the court that the foregoing statutory provisions clearly require the representation of counsel at the proceedings had before the school board to establish its record for ultimate appeals as were prosecuted by the employee Wright. It is accordingly the opinion of the court that the preparation for and representation of the school district in this important statutory proceeding before the school board were losses within the purview of paragraph III (d) of the insurance policy relating to cost of investigation and defense of legal actions. The aforesaid amount of $2,888.70 is properly included in the sum due to the plaintiff by the defendant insurance carrier.

## PREJUDGMENT INTEREST

■ In a diversity action the issue of prejudgment interest on compensatory damages is to be decided by the application of state law. Generally the Mississippi rule provides that the award of prejudgment interest rests in the discretion of the trial court. The court is vested with the discretion to award prejudgment interest where, in the court's opinion, the facts and circumstances justify the allowance of interest. *Dunn v. Koehring Co.*, 546 F.2d 1193, 1201 (5th Cir.1977); *Kelly v. Smith*, 346 F.Supp. 20 (N.D.Miss.1972); *aff'd*, 485 F.2d 520 (5th Cir.1973); *Charles Stores Inc. v. Aetna Insurance Co.*, 327 F.Supp. 525 (N.D.Miss.1971), *aff'd*, 490 F.2d 64 (5th Cir.1974); *Commercial Union Insurance Co. v. Byrne*, 248 So.2d 777 (Miss.1971).

■ The established law of Mississippi further provides that prejudgment interest shall be allowed and awarded in cases where the amount allegedly due was liquidated when the claim was filed *or* when denial of the claim was frivolous or in bad faith. *Piney Woods Country Life School v. Shell Oil Co.*, 726 F.2d 225, 242 (5th Cir.1984); *Davis v. Continental Casualty Company, a/k/a CNA*, 560 F.Supp. 723 (D.C.Miss.1983); *Home Insurance Company v. Olmstead*, 355 So.2d 310, 313–314 (Miss.1978).

■ In the case *sub judice* it should be noted that the court entered an order on March 22, 1983 denying the award of prejudgment interest in the Quong claim solely for the reason that the plaintiff did not allege that the defendant acted in bad faith or frivolously in refusing to pay the claim. It is respectfully submitted by this court that the Quong claim and all other claims involved were liquidated at the time they were submitted to the defendant for payment.

■ The defendant contends that "the law of the case doctrine" precludes this court from assessing prejudgment interest in the case *sub judice*. The Fifth Circuit Court of Appeals has specifically addressed this issue. In *Loumar v. Smith*, 698 F.2d 759 (5th Cir.1983), the court stated:

The law of the case doctrine is not, however, a barrier to corrections of judicial error. It is a rule of convenience and utility and yields to adequate reason, for the predecessor judge could always have reconsidered his initial decision so long

as the case remained in his court. Therefore, his decision should not bind a successor with jurisprudential straps stronger than those that compel him to adhere to an opinion once rendered.

698 F.2d at 762.

It is noteworthy that in *Davis, supra,* no less of an authority than the original trial judge in the case *sub judice,* awarded prejudgment interest in a case against the defendant in the case *sub judice* where the sole basis for such an award was that the claim was liquidated and no equities existed in favor of the defendant to excuse it from making prompt payment. It is the opinion of the court that although the existing law in Mississippi does not warrant the assessment of punitive damages the defendant is not clothed in equities that would preclude the assessment of prejudgment interest on these liquidated claims. It is the opinion of the court that Western Line is entitled to prejudgment interest on each of the three claims from the date each claim reached a point of disposition in each tribunal and was presented to the insurance company for payment until paid at 7.06 percent, the current federal rate of interest per annum until paid, as established by Section 302 of the Federal Courts Improvements Act, P.L. 97–164, effective October 1, 1982.

A separate judgment shall be issued accordingly.

### JUDGMENT

Pursuant to a memorandum opinion this day issued, it is hereby Ordered and Adjudged that Western Line School District have and recover of and from Continental Casualty Company judgment in the following amounts:

(1) Quong Claim:
Prejudgment interest $678.71
(2) Crawford Claim:
* 6,413.30
Prejudgment interest 3,727.00
(*Interest was not assessed on the $6,413.30)
(3) Wright Claim:
9,879.58

| Prejudgment interest | $780.00 |
| Total judgment | $21,478.59 |

Judgment is hereby entered in the amount of $21,478.59 with post judgment interest to be assessed thereon until the same is paid as provided by law.